IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 17-328 |
| v. | : | |
| ARMANDO MARTINEZ NUNEZ | : | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, through its attorneys, Louis D. Lappen, United States Attorney for the Eastern District of Pennsylvania, and Katayoun M. Copeland, Assistant United States Attorney, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual*, submits this Sentencing Memorandum. The United States respectfully requests the Court to impose a sentence within the correctly calculated high end of the guideline range of 30 to 37 months.

### BACKGROUND

On June 22, 2017, a grand jury in the Eastern District of Pennsylvania returned an indictment charging defendant Armando Martinez Nunez with illegal re-entry of an alien previously removed from the United States, in violation of Title 8, United States Code, Section 1326 (a) and (b)(2). On June 22, 2017, defendant Armando Martinez Nunez pleaded guilty to the Indictment.

Defendant Armando Martinez Nunez is a native and citizen of Mexico. He first arrived in the United States in January of 2000 through Nogales, Arizona, without inspection and admission by an immigration officer.

On May 28, 2002, Martinez Nunez was arrested by Pennsylvania State Police

in Chester County and charged under the name Ivan M. Garcia with Driving Under the Influence of Alcohol/Controlled Substance. He was initially granted Accelerated Rehabilitative Disposition but was subsequently removed and thereafter failed to appear in court for his scheduled trial date. On August 25, 2003, a bench warrant was issued.

On November 1, 2007, an Immigration and Customs Enforcement (ICE) Deportation Officer encountered Martinez Nunez at the Chester County Prison following a Criminal Alien Program ("CAP") notification and interviewed him to determine alienage and deportability. Martinez Nunez was incarcerated under the name Ivan Martinez Garcia but admitted that was not his true name. He freely admitted that he was a native and citizen of Mexico who last entered the United States in January of 2000 through Nogales, Arizona, without inspection and admission by an immigration officer. ICE lodged a detainer with the Chester County Prison.[1] Martinez Nunez, however, was released without ICE notification.

On May 22, 2014, law enforcement executed search and arrest warrants in Kennett Square and Avondale as part of a narcotics operation. Martinez Nunez was arrested as part of the operation and ICE officers interviewed him to determine alienage and deportability. After determining that Martinez Nunez was a native and citizen of Mexico, ICE officials lodged a detainer with the Chester County Prison. ICE officials drafted an I-862, Notice to Appear, but never served it on Martinez Nunez.

Martinez Nunez was charged in Chester County Court of Common Pleas with two counts of delivery/possession with intent to deliver a controlled substance, three counts

---

1 On March 28, 2008, Martinez Nunez appeared before the Court on his DUI case and entered a plea of guilty. He was sentenced to 48 hours to 12 months with credit for time served.

2

of criminal use of a communication facility, conspiracy, and criminal solicitation. On January 9, 2015, he pleaded guilty to one count of delivery/possession with intent to deliver cocaine, in violation of 35 P.S. § 780-113(a)(30), and was sentenced to a minimum of 32 months to a maximum of 64 months' imprisonment.

On May 27, 2016, an ICE Deportation Officer encountered and interviewed Martinez Nunez in prison. In a Record of Sworn Statement in Administrative Proceedings Martinez Nunez stated that he was a native and citizen of Mexico. He stated that he last entered the United States in 1998 on foot illegally into Arizona without inspection and admission by an immigration officer. He further stated that he did not have any document that permitted him to legally reside in the United States.

On May 31, 2016, ICE officials served Martinez Nunez with an I-851, Notice of Intent to Issue a Final Administrative Removal Order, charging that he was deportable because he had been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). That same day, ICE issued and served Martinez Nunez with a Final Administrative Removal Order issued by an immigration judge, ordering him removed from the United States to Mexico.

On June 9, 2016, Martinez Nunez was removed "afoot" from United States to Mexico via the Hidalgo, Texas, port of entry. Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with the defendant's deportation that contained the defendant's name, signature, photograph, alien number, and fingerprint. On June 9, 2016, prior to his removal, immigration officials served Martinez Nunez with an I-294, Warning to Alien Ordered Removed or Deported, which warned him that he was

prohibited from entering, attempting to enter or being in the United States at any time following his removal because he had been convicted of an aggravated felony. The form also advised him that he was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by two to twenty years' imprisonment.

On May 5, 2017, Homeland Security Investigations (HSI) Philadelphia and Enforcement and Removal Operations (ERO) Philadelphia conducted an operation to arrest Martinez Nunez for violations of Title 8, United States Code, 1326(a) and (b), after receiving information that Martinez Nunez had illegally returned to the United States. At approximately 10:45 a.m., law enforcement agents observed Martinez Nunez working in the kitchen at Maya Taco restaurant in Exton, Pennsylvania. Agents spoke with the restaurant manager and advised that they were there to arrest "Armando." The manager shook his head, walked to Martinez Nunez, said something to Martinez Nunez, who then walked to the back of the restaurant out of view. ICE agents, wearing ICE issued body armor, were positioned in the parking lot in the rear of the restaurant and observed Martinez Nunez open the back door of the restaurant. He looked directly at the ICE agents, stepped back and closed the door. As this was occurring, the manager walked back to the agents inside the restaurant and advised that "Armando" left. Law enforcement agents positioned themselves at the front door while other agents remained in the rear restaurant parking lot. Martinez Nunez again opened the rear door, stepped out and surrendered to ICE. Martinez Nunez was advised that he was being placed under arrest for violations of United States immigration law.

Department of Homeland Security has no record of any application for permission for Martinez Nunez to re-enter the United States.

## SENTENCING GUIDELINE CALCULATION

The Probation Office calculated the defendant's advisory guideline range as follows: the total offense level is 15 and his criminal history category is IV. The resulting advisory guideline range is 30 to 37 months.

## SENTENCING CONSIDERATIONS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

A sentence within the high end of the guideline range complies with the factors and considerations set forth in 18 U.S.C. §3553(a) and (b). The defendant's actions caused additional work for the Department of Homeland Security in their continuous efforts to enforce the immigration laws of the United States, despite the defendant's flagrant disregard of those laws. Immigration and Customs Enforcement initiated a criminal investigation that expended manpower and resources. Illegal re-entry takes a toll on the employees of the Department of Homeland Security, who are committed to providing a fair process for aliens seeking relief, as well as safe borders for the citizens and lawful permanent residents of the United States. Moreover, repeated illegal re-entry undermines the public's confidence in this country's immigration laws and the systems in place to enforce those laws. Punishing people who violate those laws, like the defendant, a recidivist, is essential to promoting the public's confidence in the integrity of the immigration system. In this case, not only did the defendant repeatedly and illegally enter the United States without inspection, but he was previously removed from the United States after having been convicted of a drug trafficking offense. When the defendant was thereafter removed, he was warned that it was illegal to re-enter. However understandable the defendant's motives for wishing to reside in the United States, once here, rather than abiding by the laws of the country, he flagrantly engaged in conduct which undermines the very fabric of this country.

The defendant's previous conviction in 2015 in the Chester County Court of Common Pleas emanated from a wiretap investigation into the Lemus family drug trafficking

organization (DTO). The defendant role in the organization was to purchase large quantities of cocaine from the DTO and thereafter distribute it to others. Based upon his role in this drug trafficking scheme, the defendant pleaded guilty to possession with intent to distribute cocaine from March 7, 2014 to April 25, 2014, and was sentenced to 32 months incarceration at a state prison. The defendant was incarcerated for this offense from his arrest date on May 22, 2014, until he was released to ICE custody on May 31, 2016, and shortly thereafter, was deported from the United States. In essence, he served only 24 months of a 32 months sentence, and despite this benefit, the defendant illegally returned to the United States. Indeed, the defendant was technically on state parole – though he certainly was not reporting – when he committed the current conduct.

       The defendant reports to the U.S. Probation Department that he entered the United States at age 17 (in 1998) and ultimately married, living with his wife and children for five years before being arrested in 2014 for trafficking cocaine. The defendant reports that while incarcerated for this offense, his marriage ended and is currently pending divorce proceedings. The defendant was deported from the United States in June 2016 and admits that he illegally returned later that same year. The defendant admits that upon his return to the United States he began working in the food industry until his arrest in May 2017.

       Defendant reported being raised by his mother and father in Southern Mexico. He advised that his father worked in agriculture and his mother was a homemaker, reporting that his childhood was "good." The defendant reported that he and his family had the necessary food, clothing and shelter, though the family struggled financially at times. Evidence shows that despite the defendant's claim of never seeing any gangs or violence in the area where he was

growing up, he has ties to the "Surenos" street gang based in Mexico. The Chester County drug trafficking investigation revealed that the drug distribution ring, of which the defendant was a part, was run and controlled by Surenos street gang members.

The defendant does not appear in need of any mental health treatment. He reported increasing use of alcohol as he grew up and occasional use of cocaine until 2014. He reported his last use of cocaine or ingestion of alcohol was in 2014, prior to his state arrest.

The defendant has an employment history in the field of food preparation, and in construction/labor. It would appear that he would benefit from vocational training.

## **CONCLUSION**

The defendant has demonstrated a complete disregard for the laws of the United States and the people who work hard to enforce them. Therefore, the United States submits that a sentence at the high end of the guideline range will promote respect for the law and possibly deter this defendant and others from illegally entering the United States.

Respectfully submitted,

LOUIS D. LAPPEN
United States Attorney


*/s/K.M.Copeland*
Katayoun M. Copeland
Assistant United States Attorney

Date:   January 16, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by e-mail and/or fax upon:

Catherine Henry, Esquire at Catherine_henry@fd.org

*/s/K.M.Copeland*
Katayoun M. Copeland
Assistant United States Attorney

DATED: January 16, 2018