# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 17-328-1** |
| | : | |
| **ARMANDO MARTINEZ NUNEZ** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Armando Martinez Nunez files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by United States Probation Officer Brian B. Piskai concludes the advisory range is 30-37 months based on a total offense level 15, Criminal History Category IV. Given the particular facts and circumstances of this case, the defense suggests that a variance from the guidelines served would best fulfill sentencing goals pursuant to *United States v. Booker,* 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).[1]

**I.     PROCEDURAL HISTORY**

On June 22, 2017, the United States Attorney's Office for the Eastern District of Pennsylvania filed an indictment charging Mr. Martinez Nunez with one count of Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and (b) (l). Mr. Martinez Nunez entered a guilty plea to the indictment on October 31, 2017. Sentencing is scheduled for January 29, 2018.

---

[1] Mr. Martinez Nunez was arrested by ICE agents on May 5, 2017. As of the date of his sentencing, he will have been in custody a just shy of nine months. However, because he was not transferred to federal custody until June 30, 2017, the Bureau of Prisons will not credit this first month and one half of custody towards any sentence imposed in this case. As such, should the Court adopt the defense's request for a variance from the guidelines, it is respectfully requested that the sentence reflected in the judgment of conviction take into account this specific term of imprisonment when fashioning its sentence.

## II. MR. MARTINEZ NUNEZ'S PERSONAL HISTORY

Mr. Martinez Nunez had a life which is similar to most people who stand before this Court awaiting sentencing for this offense. He grew up in poverty and was forced to drop out of school at an early age for financial reasons. At approximately age 17, he came to this country in search of work. Once here, he immediately began working and consistently maintained employment often working 6 days a week, 14 hours a day and supported himself and his family.

As is common among undocumented aliens, especially those from Mexico, his efforts to cross the border resulted in contacts with Border Control Agents. Also common, is the rapid deportation without prosecution following these encounters. There is no question that this practice is employed due to the volume of people crossing the border without permission. By that same token, there can also be no question that this practice does little, if anything, to discourage border crossings. This administrative process was nothing compared to the present criminal prosecution.

His motivation for reentering was his children and family for whom he was providing financial support. As he remains in custody, he is faced with the added stress of hearing how his incarceration is affecting his family's standard of living. As a result of this, he is firmly resolute to never return to this country. Thankfully, his mother is still in Mexico and now that his father has passed away and his siblings' whereabouts are unknown, it falls to Mr. Martinez Nunez to both provide for his family here and be a support system to his mother who is living alone for the first time in almost four decades. These facts will eliminate his desire to return to this country. He realizes that he cannot return to this country without risking rearrest and additional, more severe, criminal penalties. Bearing in mind how long he has been in custody

and the fact that he will remain in custody beyond whatever sentence this Court imposes awaiting deportation, this experience has impacted him deeply and has served the deterrent effect that his prior contacts with Immigrations and Customs Enforcement and deportations did not achieve. Additionally, he knows that the current political climate supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, such as him. This further reinforces the need for him to refrain from reentering the United States.

### III. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(l).

#### A. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Martinez Nunez

Mr. Martinez Nunez's work history and his motive for the commission of the instant offense, all weigh in favor of a variance from the guidelines.

#### B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*1. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Martinez Nunez's period of incarceration is especially difficult given his inability to help his family. He was providing his family with much needed income on a weekly basis. The guidelines generally account for harm, but not at all for the motive for committing the offense, which is highly relevant. Mr. Martinez Nunez understands that he should not have returned to the United States and is acutely aware of the potential for additional punishment in this and future cases. A variance from the guidelines would not promote a lack of respect for

the law as Mr. Martinez Nunez is presently incarcerated and will remain in custody at a minimum until deportation.

As the Court is aware, deportations are not immediate and Mr. Martinez Nunez is likely to be incarcerated beyond whatever sentence this Court imposes. A variance from the guidelines is warranted to expedite Mr. Martinez Nunez's removal from the United States.

*2. To afford adequate deterrence to criminal conduct.*

A sentence within the guidelines is neither warranted nor necessary to further deter Mr. Martinez Nunez from returning. He understands what he would likely face if he returns in the future, which is unfathomable to him given his present guideline range. Mr. Martinez Nunez has been incarcerated since April 2017. Mr. Martinez Nunez will not receive credit for the first month he was in Immigration custody towards his federal sentence. Mr. Martinez Nunez is very much aware of the significant period of incarceration he faces both and now and in the future should he to return again. Moreover, the fact that Mr. Martinez Nunez was prosecuted for this offense, in lieu of immediate deportation, should serve as sufficient deterrence.

*3. To protect the public from further crimes of the defendant.*

Mr. Martinez Nunez poses no threat to the public. At the time he was arrested he was working a full time job and supporting his family. He will be returned to immigration custody for deportation upon completion of his sentence. Protection of the public is of diminished concern in this case. Furthermore, a variance from the guidelines would mitigate the expense of incarcerating Mr. Martinez Nunez prior to his deportation.

**C.     Kinds of Sentences Available**

The range of sentences statutorily available to the Court, including the advisory guidelines range, are listed in Part D of the PSR. This range includes a sentence of

incarceration of up to twenty years, not more than three years of supervised release, and a fine of up to $250,000.

Section 501.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. Moreover, the Third Circuit recently recognized the presumption against imposing supervised release in cases where the defendant is a deportable immigrant. See <u>United States v. Azcona-Polanco,</u> __F.3d __, 2017 WL 3184723, *1 (3d Cir. July 27, 2017).

## IV. **<u>CONCLUSION</u>**

Based on the above reasons, the defense respectfully requests the Court grant a variance from the guidelines and impose a sentence of that takes into consideration the time he has already spent incarceration and the desire to expedite his imminent removal from the United States.

    Respectfully submitted,

    /s/ Natasha Taylor-Smith
    NATASHA TAYLOR-SMITH
    Assistant Federal Defender

# CERTIFICATE OF SERVICE

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum, by electronic notification and/or hand delivery to her office, upon Katayoun M. Copeland, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

/s/ Natasha Taylor-Smith
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE: January 24, 2018